Matter of Brownell v New York State Justice Ctr. for the Protection of People with Special Needs (2023 NY Slip Op 00251)

Matter of Brownell v New York State Justice Ctr. for the Protection of People with Special Needs

2023 NY Slip Op 00251

Decided on January 19, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 19, 2023

533204/533208/ 533209/533210/ 533211 
[*1]In the Matter of Anthony Brownell, Petitioner,
v
New York State Justice Center for the Protection of People with Special Needs, Respondent. (Proceeding No. 1.)
In the Matter of Michelle Hale Brownell, Petitioner,
v
New York State Justice Center for the Protection of People with Special Needs, Respondent. (Proceeding No. 2.)
In the Matter of Scott Norton, Petitioner,
v
New York State Justice Center for the Protection of People with Special Needs, Respondent. (Proceeding No. 3.)
In the Matter of Billie Ann Scott, Petitioner,
v
New York State Justice Center for the Protection of People with Special Needs, Respondent. (Proceeding No. 4.) In the Matter of Shelly Gadway, Petitioner,

Calendar Date:November 21, 2022

Before:Egan Jr., J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ. 

Daren J. Rylewicz, Civil Service Employees Association, Inc., Albany (Scott Lieberman of counsel), for petitioner.
Letitia James, Attorney General, Albany (Chris Liberti-Conant of counsel), for respondent.

Egan Jr., J.P.
Proceedings pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review five determinations of respondent partially denying petitioners' requests to amend and seal reports of abuse and neglect.
Petitioners were employed at the Sunmount Developmental Disabilities Services Office, a large residential facility for individuals with mental and intellectual difficulties that is operated by the State Office for People With Developmental Disabilities (hereinafter OPWDD) in the Village of Tupper Lake, Franklin County. On October 5, 2013, K.A., a service recipient at the facility, was taken down to the floor and restrained by staff members in a computer room at the facility. Staff members Corey Casciaro, petitioner Scott Norton and petitioner Anthony Brownell were involved in the takedown and subsequent restraint. K.A., who had no prior history of seizures, suffered a grand mal seizure while being restrained on the floor. At some point, staff member Jessica Rice triggered her "blue dot," a device all staff members carried that signaled a need for immediate assistance and their exact location, while another staff member phoned in a "[c]ode 4000" to report a medical emergency. Numerous staff members were at the scene at various points, including petitioners Michelle Hale Brownell (hereinafter Hale), Billie Ann Scott and Shelly Gadway. K.A. received emergency medical attention and was transported by ambulance to the hospital, where he was found to have an abrasion on his head, diagnosed with a head injury and posttraumatic seizure and discharged the same day.
The incident was reported to respondent on October 7, 2013, triggering an extensive investigation that included interviews with numerous staff members, K.A. and other service recipients who were either directly involved in the incident or could otherwise shed light on what had occurred. The investigation uncovered evidence that the takedown had not occurred as described, with eyewitnesses reporting that Casciaro was angry with K.A. because of a comment he had made to Rice — who was Casciaro's girlfriend — and that Casciaro tackled him. After K.A. struck his head on the floor and began seizing, staff members in the area delayed in summoning assistance so that they could discuss their next steps. The subsequent behavior of those staff members reflected an attempt to conceal what had actually occurred, including their failure to tell responding medical personnel that K.A. had struck his head and their false claims that K.A. had attacked Casciaro before the takedown and that they had rolled K.A. onto his side.
The investigation led to criminal charges against Casciaro, Rice, Norton and several other staff members. There were also efforts by OPWDD to take disciplinary action, including one to terminate Norton for his intentionally making false statements to a State Police investigator about the incident and his role in it. The disciplinary matter [*2]ultimately proceeded to an arbitration hearing, after which the arbitrator dismissed the notice of discipline because OPWDD had not sustained its burden of proving the allegations against Norton.
After the criminal proceedings had concluded, respondent notified petitioners in September or October 2016 that it had found the allegations of abuse and/or neglect against them, relating to the incident and its aftermath, to be substantiated (see Social Services Law § 493 [3]). Respondent notified petitioners that allegations of category one neglect had been substantiated given their failure to provide adequate medical care to K.A. and that, with regard to Brownell, Gadway, Scott and Hale, allegations of category two abuse had been substantiated in view of their making false statements in their preliminary witness statements to OPWDD (see Social Services Law § 493 [4] [a] [ii]; [b]). Respondent also notified petitioners that allegations of category one abuse had been substantiated in that they had intentionally made false statements to its investigators in an effort to obstruct their investigation (see Social Services Law § 493 [4] [a] [xiii]).
After petitioners' requests that the reports be amended to unsubstantiated were denied, the matters proceeded to a combined administrative hearing (see Social Services Law § 494). Upon Norton's motion to dismiss the allegations against him as barred by the results of his arbitration proceeding, the Administrative Law Judge (hereinafter ALJ) agreed that the category two abuse allegation against him was an attempt to relitigate the issue in that proceeding and dismissed it. The ALJ denied that part of Norton's motion seeking dismissal of the neglect finding against him as time barred by CPLR 214 (2), as well as Brownell's motion to dismiss the substantiated findings against him as untimely pursuant to CPLR 214 (2) and Social Services Law § 493 (1).
After the conclusion of the hearing, the ALJ issued recommended decisions finding that Brownell, Gadway and Scott had committed the alleged conduct.[FN1] The ALJ issued recommended decisions finding that Hale committed category one abuse by intentionally making false statements to respondent's investigators and that Norton committed category one neglect in failing to provide K.A. with adequate medical care. Respondent adopted the recommended decisions in their entirety, prompting petitioners to commence these CPLR article 78 proceedings. Supreme Court transferred the matters to this Court (see CPLR 7804 [g]), and we confirm.
At the outset, we reject petitioners' contention that the substantiated report against Brownell was untimely in that respondent did not make findings on the underlying report of abuse and neglect for approximately three years after receipt. Social Services Law § 493 (1) provides that, "[w]ithin [60] days of the vulnerable persons' central register accepting a report of an allegation of abuse or neglect, [respondent] shall cause the findings of the [*3]investigation to be entered into the vulnerable persons' central register." "Although use of the word 'shall' generally denotes a mandatory requirement, when addressing time limits imposed on agencies and officials, courts have held that, unless the language used in a statute or regulation shows that the designation of time was intended as a limitation on the power of the body or officer, the provision is directory rather than mandatory" (Matter of McMillian v Krygier, 197 AD3d 800, 801 [3d Dept 2021] [internal quotation marks, citations and brackets omitted]; see Matter of Grossman v Rankin, 43 NY2d 493, 501 [1977]; Matter of Maria PP. v Commissioner of NYS Off. of Children & Family Servs., 162 AD3d 1297, 1298 [3d Dept 2018]). The statutory language gives no indication of such an intent; to the contrary, it explicitly authorizes respondent to "take additional time to enter such findings into the vulnerable persons' central register" so long as "the reasons for any delay [are] documented and such findings submitted as soon thereafter as practicably possible" (Social Services Law § 493 [1]). Respondent sufficiently explained that the delay here was due to its desire to wait for the criminal matters arising out of the incident to resolve themselves and, "absent a showing of substantial prejudice that has not been made here," Social Services Law § 493 (1) posed no bar to the findings against Brownell (Matter of Maria PP. v Commissioner of NYS Off. of Children & Family Servs., 162 AD3d at 1298).
Petitioners' separate contention that CPLR 214 barred the findings against Brownell and Norton is also unavailing. CPLR 214 imposes a time limit upon the commencement of certain "action[s]" in court and, as "an administrative proceeding is not an action" within the meaning of the CPLR, its provisions are inapplicable here (Matter of Fiedelman v New York State Dept. of Health, 58 NY2d 80, 82 [1983]; see CPLR 101, 105 [b]; 201; Matter of IESI NY Corp. v Martinez, 8 AD3d 667, 668-669 [2d Dept 2004]; Matter of City of Syracuse v Public Empl. Relations Bd., 279 AD2d 98, 105 [4th Dept 2000], lv denied 96 NY2d 717 [2001]; Matter of Taylor v Vassar Coll., 138 AD2d 70, 72 [3d Dept 1988]). It follows that the findings were not rendered untimely by CPLR 214 and, in short, that neither Brownell nor Norton demonstrated their entitlement to dismissal of the findings against them as time barred.
We are similarly unpersuaded by petitioners' argument that the arbitrator's decision in the disciplinary proceeding against Norton collaterally estopped respondent from proceeding against them. To the limited extent that the argument is preserved for our review, collateral estoppel only "preclude[s] subsequent litigation of a claim or issue decided in a prior arbitration against a party or those in privity" (Matter of Anonymous v New York State Justice Ctr. for the Protection of People with Special Needs, 174 AD3d 1007, 1009 [3d Dept 2019]). The sole question resolved in the arbitration [*4]proceeding against Norton was whether he had made false statements in his interview with a State Police investigator and, as the ALJ properly concluded, respondent was barred from revisiting that issue. Petitioners have not shown how the veracity of Norton during that interview has any bearing on whether Norton or the other petitioners committed abuse or neglect in other respects, however, and have therefore failed to demonstrate the identity of issue that would bar respondent from attempting to prove that those separate acts occurred (see e.g. Congregation Machne Ger v Berliner, 201 AD3d 1268, 1270-1271 [3d Dept 2022]; State Farm Fire & Cas. Co. v McCabe, 162 AD3d 1294, 1296-1297 [3d Dept 2018]).
Turning to the question of whether respondent succeeded in proving that such abuse and neglect occurred, it is well settled that "an administrative determination following an evidentiary hearing required by law must be supported by substantial evidence and, if that evidence is present in the record, this Court cannot substitute its judgment for that of respondent" (Matter of Lynch v NYS Justice Ctr. for the Protection of People with Special Needs, 190 AD3d 1063, 1064 [3d Dept 2021] [internal quotation marks, brackets and citation omitted], lv denied 37 NY3d 903 [2021], cert denied ___ US ___, 142 S Ct 800 [2022]; see Matter of Shanahan v Justice Ctr. for the Protection of People with Special Needs, 198 AD3d 1157, 1158 [3d Dept 2021]; Matter of Salu v NYS Justice Ctr. for the Protection of People with Special Needs, 190 AD3d 1059, 1061 [3d Dept 2021], lv denied 37 NY3d 903 [2021], cert denied ___US ___, 142 S Ct 802 [2022]). "Moreover, hearsay is admissible as competent evidence in an administrative proceeding, and if sufficiently relevant and probative may constitute substantial evidence even if contradicted by live testimony on credibility grounds" (Matter of Shanahan v Justice Ctr. for the Protection of People with Special Needs, 198 AD3d at 1158 [internal quotation marks and citations omitted]; see Matter of Lynch v NYS Justice Ctr. for the Protection of People with Special Needs, 190 AD3d at 1064).
At the hearing, respondent attempted to prove that the claimed acts of abuse and neglect had occurred with the testimony of one of its investigators, through which it placed into evidence exhibits documenting its investigation, including the recordings and transcripts of interviews with petitioners, other staff members, K.A.'s father and other service recipients, as well as court transcripts and other materials arising out of the related criminal proceedings against various staff members. Respondent further presented the testimony of a treatment team leader at the facility who described the protocols for restraining a service recipient and caring for a service recipient who was suffering a seizure. Each petitioner except Brownell testified on his or her own behalf in response, and petitioners also presented the testimony of Casciaro, Rice and other staff [*5]members involved in the incident, all of whom cast their and petitioners' actions in an innocent light.
After hearing the foregoing, the ALJ found, and respondent agreed, that Brownell, Gadway, Scott and Norton had committed category one neglect by failing to provide adequate medical care to K.A.; that Brownell, Gadway and Scott had committed category two abuse by giving materially false information in their preliminary witness statements to OPWDD; and that Brownell, Gadway, Scott and Hale had then committed category one abuse by making materially false statements to respondent's investigators with the intent of obstructing their investigation. Those findings were largely based upon the hearsay statements of Jeff Defayette, a staff member who, in his interviews with respondents' investigators, recanted an initial account that tracked those of the other staff members and described in detail what had actually occurred during the takedown and its aftermath. In particular, Defayette related how K.A. did not assault Casciaro but was nevertheless tackled by him around 3:15 p.m. on October 5, 2013, causing K.A. to strike his head on the floor and suffer a seizure soon thereafter. The staff members who were present — who included Brownell and Norton at the outset and Gadway, Scott and Hale later — delayed in seeking medical assistance for at least 15 minutes in the hope that K.A. might come out of the seizure on his own and in order to come up with a story that would "sweep [what actually happened] under the carpet." Defayette confirmed that no one rolled K.A. onto his side, which other evidence reflected could have been appropriate for a person having a seizure in order to keep their airway clear, and Defayette did not recall anyone telling responding medical personnel that K.A. had struck his head. Moreover, Defayette described how he subsequently wrote his preliminary witness statement in a room with Gadway, Scott and Rice, making clear that he had written down what Rice told him to say and that the account in his statement was "fabricated."
Defayette's claims were corroborated in significant respects by other evidence in the record, including the testimony of K.A. at various criminal trials as well as the statements of K.A.'s father and several other service recipients who saw portions of what transpired. The claims were also supported by Brownell's admissions to investigators that he heard K.A. hit his head on the floor when Casciaro "dropped" him and that, fearing they were all going to be "fired," he asked Casciaro what he should say, prompting Casciaro to warn him not to "say [that K.A. had] hit his head." Moreover, various medical providers stated that they arrived to find K.A. lying on his back, not on his side, and that no one told them that K.A. had struck his head despite being asked. The ALJ noted this proof, as well as that Defayette was making admissions against his own interest by acknowledging that he had lied in his preliminary witness [*6]statement, and found his account to be credible.[FN2] There is no question that the ALJ — and, in turn, respondent — was entitled to do so notwithstanding the conflicting testimony presented by petitioners (see Matter of Lynch v NYS Justice Ctr. for the Protection of People with Special Needs, 190 AD3d at 1065; Matter of Roberts v New York State Justice Ctr. for the Protection of People with Special Needs, 152 AD3d 1021, 1024 [3d Dept 2017]).
Having credited the foregoing proof, there was little doubt that Brownell, Gadway, Scott and Norton had all failed to provide K.A. with adequate medical care by failing to seek prompt treatment for his injuries, roll him onto his side and/or advise medical staff that he had a head injury. The credible proof further reflected that Brownell, Gadway, Scott and Hale made materially false statements regarding what had occurred. Specifically, although Defayette made clear that K.A. had not attacked Casciaro before the takedown, Brownell claimed that he had in a preliminary witness statement. Brownell, Gadway and Scott also all claimed in their preliminary witness statements that K.A. was lying on his side before medical personnel arrived.[FN3] Thereafter, Brownell falsely told respondent's investigators that K.A. had struck Casciaro before the takedown, and he, Gadway, Scott and Hale all told those investigators, among other things, that K.A. had been placed on his side. Thus, we are satisfied that substantial evidence in the record supports the challenged determinations in all respects (see Matter of Salu v NYS Justice Ctr. for the Protection of People with Special Needs, 190 AD3d at 1062; Matter of Taylor v Justice Ctr. for the Protection of People with Special Needs, 182 AD3d 815, 817-818 [3d Dept 2020]).
Petitioners' remaining contentions, including that they were improperly found to have committed category one neglect and abuse, have been examined and found to lack merit.
Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ADJUDGED that the determinations are confirmed, without costs, and petitions dismissed.

Footnotes

Footnote 1: The ALJ did find that respondent had not shown that Gadway or Scott neglected K.A. by failing to comply with the requests of emergency responders for information; the ALJ nevertheless found that both did neglect K.A. in that they failed to seek immediate medical attention for him and ensure that he was appropriately positioned during his seizure.

Footnote 2: Defayette paid a price for his admissions, as he was subsequently indicted on charges that he offered a false statement — namely, his preliminary witness statement — for filing. He was convicted in 2016 of one count of offering a false instrument for filing in the second degree.

Footnote 3: Although the staff members involved were all in agreement that K.A. had been placed on his side, they had difficulty deciding on which side. Defayette, Gadway and Scott all stated that K.A. was lying on his right side; Brownell stated that he was lying on his left side.